GERHARD R. BRECHT and ERIKA E. BRECHT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brecht v. Commissioner
Docket No. 11440-77.
United States Tax Court
T.C. Memo 1981-688; 1981 Tax Ct. Memo LEXIS 57; 42 T.C.M. (CCH) 1778; T.C.M. (RIA) 81688; 2 Employee Benefits Cas. (BNA) 2258; November 30, 1981. *57 Petitioner made contributions to his corporate employer's qualified plan during the first 2 months of 1975. In February of 1975, petitioner was laid off from his employment, at which time he discontinued his contributions. In May of the same year, he commenced his own business and subsequently contributed $ 1,500 to a newly-established individual retirement account for the 1975 taxable year. Petitioner formally terminated his employment with his corporate employer in 1976. Had he returned to active employment rather than terminating, he would have been reinstated to his former status under the plan as of the time of his layoff. Held, petitioner is not entitled to a deduction under sec. 219(a), I.R.C. 1954, for his contribution to an individual retirement account in 1975. Foulkes v. Commissioner, 638 F.2d 1105 (7th Cir. 1981), distinguished. Gerhard R. Brecht, pro se. Bryan Sullivan, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: By statutory notice dated September 28, 1977 respondent determined a deficiency of $ 378.76 in petitioners' Federal income tax and an addition to tax of $ 90 under section 6651(a), I.R.C. 1954, for the taxable *58 year 1975. During trial, respondent conceded the addition to tax, and therefore the sole issue remaining for decision is whether petitioners are entitled to a deduction under section 219 in the amount of $ 1,188.82 for a contribution to an individual retirement account. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, supplemental stipulation of facts, and attached exhibits are incorporated herein by this reference. Petitioners Gerhard R. Brecht and his wife Erika E. Brecht resided in Chicago, Illinois at the time of filing the petition herein. Erika E. Brecht is a party to this proceeding solely by reason of her filing a joint income tax return with Gerhard R. Brecht (hereinafter petitioner). They filed their Federal income tax return for the calendar year 1975 with the Office of the Director, Internal Revenue Service Center, Kansas City, Missouri. Petitioner was employed as a tool and die maker for Kinkead Industries, Inc. of Chicago, Illinois (hereinafter Kinkead) from July 1959 until February, 1975, at which time he was laid off by Kinkead. Petitioner remained laid off until approximately April 1976, when he formally terminated *59 his employment with the company. During the first two months of 1975 petitioner was an active participant in a qualified retirement plan sponsored by Kinkead. He had first become a participant in the plan on September 1, 1974, and he accrued benefits under such plan during his 2-month participation in 1975. Petitioner made no contributions to the plan after he was laid off in February, 1975. On or about May 15, 1976, after petitioner had formally terminated his employment with Kinkead, he was refunded $ 101.41 by the company. The refund, which was pursuant to Article 6.1 of the retirement plan, was comprised of petitioner's prior contributions to the plan of $ 98.26 and interest accrued thereon of $ 3.15. Petitioner had no vested rights in the plan at any time during 1975 or 1976. Kinkead's retirement plan as in effect in 1975 was a "pension plan," providing for the payment of definitely determinable benefits to employees upon their retirement. Under Article 5.3 of the plan, a participant's retirement benefits were calculated by multiplying his number of years of continuous employment by a percentage of his average compensation over a specified duration. [1] Thus, retirement *60 benefits as computed under the plan were a positive function of a participant's "continuous employment." "Continuous employment" was defined under Article 1.3 of the plan as "the period during which an employee is employed without interruption by the Company and by any affiliated company, whether on a salary or hourly basis of compensation." A participant's period of continuous employment included any authorized leave of absence. Under Article 8.1 of the plan, a participant was considered on authorized leave of absence during a period in which he was laid off. Article 5.4(c) of the plan provided that, for purposes of computing the pension benefits under the plan, the period of any absence *61 not amounting to a termination in employment and during which the participant received no compensation from the company was not to be included in the participant's period of continuous employment except in certain limited circumstances, not here relevant. Thus, if a participant was laid off without pay and subsequently resumed employment, his continuous employment included the period beginning at the time he first became a participant and continuing up until the present less the period during which he was laid off. However, if a participant did not return to employment after being laid off, his employment was deemed to have terminated, under Article 8.2, at the time he was originally laid off. If a participant terminated employment and then subsequently reentered employment, he was considered to have entered employment as of the date of reentry under Article 1.3 of the plan. In May 1975, some 3 months after being laid off by Kinkead, petitioner became self-employed. Thereafter, he consulted an IRS agent with respect to the relative merits of an individual retirement account (IRA) as compared to a Keogh plan. The agent advised petitioner to establish an IRA rather than a Keogh *62 plan. Following this advice, petitioner set up an IRA at Northwest Federal Savings & Loan Association by contributing $ 1,500 to the account at sometime prior to December 31, 1975. On his 1975 tax return petitioner deducted $ 1,188.82, or 15 percent of the $ 7,925.53 net profit derived from his sole proprietorship, as an IRA contribution. In his statutory notice, respondent disallowed the deduction in its entirety and determined that petitioner and his wife owed a deficiency of $ 378.76. [2] OPINION Petitioner worked for Kinkead for the first 2 months of 1975, making contributions to Kinkead's retirement plan during such time. He discontinued the contributions at the time of his layoff in February of 1975. In May of the same year, petitioner started his own business. He subsequently contributed $ 1,500 to a newly-established individual retirement account at some time prior to December 31, 1975 and claimed a deduction therefor under the asserted authority of section 219(a). In May of the following year petitioner formally terminated his employment *63 with Kinkead. The single issue for decision is whether petitioners are entitled to a deduction under section 219 for a contribution made by petitioner during 1975 to an individual retirement account. Section 219(a) allows a deduction from gross income for amounts contributed to an individual retirement account. [3] *64 The amount deductible is limited by section 219(b)(1) to the lesser of $ 1,500 or 15 percent of the individual's compensation includable in gross income for the relevant taxable year. However, the deduction is disallowed in its entirety for the taxable year if, inter alia, the individual was an "active participant" in a qualified plan as described in section 401(a) for any part of such taxable year. [4] There is no question that petitioner was a participant in Kinkead's qualified plan during the first 2 months of 1975. Though section 219 does not define the term "active participant," the report of the Ways and Means Committee provides that: An individual is to be considered an active participant in a plan if he is accruing benefits under *65 the plan even if he only has forfeitable rights to those benefits. Otherwise, if an individual were able to, e.g., accrue benefits under a qualified plan and also make contributions to an individual retirement account, when he later becomes vested in the accrued benefits he would receive tax-supported retirement benefits for the same year both from the qualified plan and the retirement savings deduction. * * * [H. Rept. 93-807 at 364, 1974-3 C.B. (Supp.) 364.] Thus, the mere fact that petitioner's rights were forfeitable under the plan does not, by itself, take him outside of the grasp of section 219(b)(2)(A)(i). Orzechowski v. Commissioner, 69 T.C. 750, 753 (1978). This case is distinguishable from the decision of the Seventh Circuit in Foulkes v. Commissioner, 638 F.2d 1105 (1981), revg. a Memorandum Opinion of this Court. In Foulkes, the Seventh Circuit found that participation in a qualified plan during a taxable year did not automatically preclude the deductibility of contributions made to an IRA during such year. IRA deductions are disallowed under section 219(b)(2)(A)(i) as a consequence of "active participation" in a qualified plan, a phrase found by the Seventh Circuit *66 not to include all forms of participation. In reaching this conclusion, the court emphasized the fundamental purpose of section 219(b)(2), which is to eliminate the potential for an individual to reap the tax benefit provided by participation in a qualified plan while simultaneously reaping the tax benefit provided by section 219(a) for contributions to an IRA. One is an "active participant" in a qualified plan only if, as of the end of the relevant taxable year, one has the potential at some time in the future to reap the tax benefit derived from participation in the plan during such taxable year. The court stressed that it was the potential for the double tax benefit and not merely the actual double tax benefit that was forbidden. Foulkes v. Commissioner, supra at 1107-1109. Under Foulkes, the potential for a double tax benefit is to be assessed at the close of the taxable year, here, December 31, 1975. At that time, petitioner had been laid off by Kinkead, but had not yet formally terminated his employment. If, instead of subsequently terminating such employment, petitioner had returned as an active employee of Kinkead, he would have been reinstated to his former status under *67 the plan as of the date he was laid off. Under these hypothetical circumstances, petitioner would have reaped the tax benefit of his 2-month 1975 participation in the plan. Thus, viewing the facts at yearend 1975, petitioner at that time had the potential to obtain the tax benefit of participation during such taxable year in a qualified plan. It matters not that petitioner failed to receive such benefit. In Foulkes, the Seventh Circuit held that the taxpayer has not an "active participant" since there was no potential for a double tax benefit as of the yearend of the relevant taxable year. Here, such potential existed and therefore our case is distinguishable. [5] It naturally follows that petitioner's participation in Kinkead's retirement plan during 1975 constituted "active participation" in such plan for purposes of section 219(b)(2)(A). Orzechowski v. Commissioner, supra; Chapman v. Commissioner, 77 T.C. 477 (1981). Petitioner took the IRA deduction in complete good faith. Being unfamiliar with the eligibility requirements of retirement plans, he followed what appeared to be a prudent route *68 and consulted a local IRS agent. The agent advised petitioner to set up an IRA rather than a Keogh plan, which he did. Based on the agent's advice, petitioner honestly believed that he was entitled to a deduction for his subsequent IRA contribution and is now confused by respondent's insistence that the deduction was improper. His confusion is totally understandable. As much as we sympathize with petitioner's unfortunate plight, we are unable to afford relief for the law is clear that erroneous legal advice rendered by an IRS agent is binding on neither respondent nor this Court. Dixon v. United States, 381 U.S. 68, 72-73 (1965); Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 183 (1957); Druker v. Commissioner, 77 T.C.     (Oct. 15, 1981); Neri v. Commissioner, 54 T.C. 767, 771-772 (1970). Therefore, because we find that petitioner was an "active participant" in a qualified plan during 1975, his deduction for amounts contributed to an individual retirement account must be denied. Accordingly, Decision will be entered under Rule 155. Footnotes
1. A participant could, at his option, elect instead to receive a reduced pension in the form of an annuity under either Article 5.7 or 5.8. He could also elect to receive the actuarial equivalent of his pension in a single lump sum. The benefits to be received under these options were computed by making actuarial adjustments to the base formula contained in Article 5.3. Thus, even were an election made, the benefits received were positively correlated to the participant's "continuous employment."↩
2. The Commissioner did not impose an excise tax on excess contributions to an IRA, nor was such issue raised in the pleadings. See sec. 4973.↩
3. Sec. 219(a) provides: SEC. 219. RETIREMENT SAVINGS. (a) Deduction Allowed.--In the case of an individual, there is allowed as a deduction amounts paid in cash during the taxable year by or on behalf of such individual for his benefit-- (1) to an individual retirement account described in section 408(a), (2) for an individual retirement annuity described in section 408(b), or (3) for a retirement bond described in section 409 (but only if the bond is not redeemed within 12 months of the date of its issuance). For purposes of this title, any amount paid by an employer to such a retirement account or for such a retirement annuity or retirement bond constitutes payment of compensation to the employee (other than a self-employed individual who is an employee within the meaning of section 401(c)(1)) includible in his gross income, whether or not a deduction for such payment is allowable under this section to the employee after the application of subsection (b). ↩
4. Sec. 219(b)(2)(A)(i) provides: (b) Limitations and Restrictions.-- (2) Covered by certain other plans.--No deduction is allowed under subsection (a) for an individual for the taxable year if for any part of such year-- (A) he was an active participant in-- (i) a plan described in section 401(a) which includes a trust exempt from tax under section 501(a) * * *.↩
5. See, in this regard, Foulkes v. Commissioner, 638 F.2d 1105, 1109↩ n. 16 (7th Cir. 1981).